# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK RUGGIERO, | ) | CASE NO. 5:17-cv-02705 |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Frank Ruggiero (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 12). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On August 15, 2013, Plaintiff filed his application for SSI, alleging a disability onset date

of June 1, 2013. (Transcript ("Tr.") 310-315). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 196-207). Plaintiff participated in a hearing on May 14, 2015, was represented by counsel, and testified. (Tr. 38-76). On June 16, 2015, the ALJ found Plaintiff not disabled. (Tr. 173-184). On August 9, 2016, the Appeals Council remanded this matter to the ALJ at Plaintiff's request for a new decision. (Tr. 190-194).

On November 29, 2016, Plaintiff participated in a new hearing, was represented by counsel, and testified. (Tr. 77-121). A Vocational Expert ("VE") also testified. *Id*. On January 12, 2017, the ALJ found Plaintiff was disabled as of January 24, 2016, but not disabled prior to that date. (Tr. 19-30). On October 31, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3).

On December 28, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13, 14 & 15).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On September 9, 2013, Plaintiff complained to Yuan-Hua Thakore, M.D., that his depression worsened when he "got off [his] Prozac." (Tr. 570). Plaintiff reported depression for many years and panic attacks. *Id*. He reported a fear of the legal system since pleading guilty to criminal activity, and that his distrust of the legal system returned after he stopped taking Prozac.

---

[1] The recitation of the evidence is not intended to be exhaustive. The court notes that neither parties' brief sets forth a sufficient recitation of the relevant medical evidence as required by the court's initial order.

*Id*. He reported 25 years of sobriety and attending support meetings seven to eight times per week. *Id*. On mental status examination, Plaintiff had average activity and eye contact and clear speech, no delusions or hallucinations, a constricted/blunted affect, cooperative behavior, anxious mood, fair insight and judgment, and logical thought. *Id*. Dr. Thakore increased Plaintiff's Prozac and encouraged him to see a counselor. (Tr. 571).

Two days later, on September 12, 2013, Plaintiff was seen by Daniel Langer, Ed. D. ("Doctor of Education"). (Tr. 568-569). Plaintiff reported moderate to severe depression with crying spells and withdrawal, anxiety, and paranoia. (Tr. 568). On mental status examination, Dr. Langer noted Plaintiff had slowed activity, was adequately groomed, avoided eye contact, and had clear speech. *Id*. Plaintiff was noted as suffering from persecutory delusions concerning the government and paranoia. *Id*. His affect was labile, his behavior was avoidant and withdrawn but cooperative, and his mood was anxious and depressed. *Id*. He was oriented x 4, had poor insight, fair judgment, and tangential thought. *Id*.

On August 7, 2014, Dr. Langer noted that Plaintiff continued to struggle with paranoid ideation, PTSD related distressing memories, and panic in social situations. (Tr. 660). Plaintiff had a positive response to medication for depression and anxiety. *Id*.

On September 5, 2014, Plaintiff was seen by Dr. Thakore and reported "doing fine." (Tr. 597). On mental status examination, Plaintiff had average activity, average eye contact, clear speech, persecutory delusions and paranoia, a full affect, cooperative behavior, a euthymic mood, fair insight and judgment, and logical thought. *Id*. Dr. Thakore decreased Plaintiff's Prozac and started him on Risperdal for paranoia. (Tr. 598).

On September 10, 2014, Dr. Langer's mental status examination of Plaintiff revealed slowed activity, adequate grooming, average eye contact, and clear speech. (Tr. 595). Plaintiff

3

was noted as suffering from attention/concentration and memory impairment, as well as persecutory delusions and paranoia. *Id*. His affect was appropriate, his behavior was avoidant and withdrawn but cooperative, and his mood was anxious and depressed. *Id*. He was oriented x4, had fair insight, fair judgment, and concrete thought. *Id*.

On November 5, 2014, Dr. Langer's mental status examination of Plaintiff revealed slowed activity, adequate grooming, average eye contact, and clear speech. (Tr. 592). Plaintiff was noted as suffering from persecutory delusions and paranoia. *Id*. His affect was appropriate, his behavior was avoidant and withdrawn but cooperative, and his mood was anxious and depressed. *Id*. He was oriented x 4, had fair insight, fair judgment, and concrete thought. *Id*.

On December 1, 2014, on mental status examination, Dr. Thakore noted Plaintiff had average activity, was adequately groomed, made average eye contact, and had clear speech. (Tr. 589-591). No delusions or hallucinations were reported. *Id*. His affect was full, his behavior was cooperative, and his mood was euthymic. *Id*. He had fair insight and judgment, as well as logical thought. *Id*. Dr. Thakore decreased Plaintiff's Prozac, and noted that "[n]ow that the client is feeling better, discussed ways to prevent symptom recurrence." (Tr. 590).

On February 12, 2015, Dr. Langer's mental status examination of Plaintiff revealed slowed activity, adequate grooming, avoidant eye contact, and clear speech. (Tr. 587). Plaintiff was noted as suffering from persecutory delusions and paranoia. *Id*. His affect was appropriate, his behavior was avoidant and withdrawn but cooperative, and his mood was anxious and depressed. *Id*. He was oriented x 4, had fair insight, fair judgment, and concrete thought. *Id*.

On February 27, 2015, Plaintiff reported "[h]e had to put [his cat] down" and having run out of Risperdal a week earlier. (Tr. 584). On mental status examination, Dr. Thakore noted Plaintiff had average activity, was adequately groomed, made average eye contact, and had clear

4

speech. (Tr. 584). No delusions or hallucinations were reported. *Id*. His affect was constricted/blunted, his behavior was cooperative, and his mood was depressed. *Id*. He had fair insight and judgment, as well as logical thought. *Id*.

On April 27, 2015, on mental status examination, Dr. Thakore noted Plaintiff had average activity, was adequately groomed, and had clear speech. (Tr. 581-583). No delusions or hallucinations were reported. His affect was full, his behavior was cooperative, and his mood was euthymic. *Id*. He had fair insight and judgment, as well as logical thought. (Tr. 582). Dr. Thakore adjusted Plaintiff's medications based on his recently expressed concerns. *Id*.

On April 29, 2015, on mental status examination, Dr. Langer noted Plaintiff was adequately groomed, made average eye contact, and had clear speech. (Tr. 578). Plaintiff was noted as suffering from persecutory delusions and paranoia. *Id*. His affect was labile, his behavior was avoidant and withdrawn but cooperative, and his mood was anxious and depressed. *Id*. His thought was concrete and dichotomous. *Id*. He opined that Plaintiff's symptoms had not improved with therapy and medication, and that a partial hospitalization program may prove beneficial. (Tr. 579).

On June 3, 2016, nearly six months after the date on which Plaintiff's disability was found to have ensued by the ALJ, Plaintiff reported to Dr. Thakore that he felt pretty good and had a stable mood. (Tr. 878-881). Dr. Thakore indicated Plaintiff had no history of psychiatric admissions. (Tr. 878, Exh. 19F/14). On mental status examination, Dr. Thakore noted Plaintiff had average activity, was adequately groomed, made average eye contact, and had clear speech. (Tr. 879). No delusions or hallucinations were reported. *Id*. His affect was full, his behavior was cooperative, and his mood was euthymic. *Id*. He had fair insight and judgment, as well as logical thought. *Id*. His medications were continued unchanged. *Id*.

5

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On September 17, 2013, Plaintiff underwent a psychological evaluation performed by clinical neuropsychologist Joshua Magleby, Ph.D. (Tr. 509-516). On mental status examination, Dr. Magleby found Plaintiff was oriented x4, had normal conversation and thought content, and reality testing appeared within normal limits, and had normal affect. (Tr. 513). Plaintiff displayed overt signs of anxiety, social phobic symptoms were severe, and generalized anxiety symptoms were mild to moderate. (Tr. 513). Plaintiff did not report symptoms of trauma, PTSD, or acute distress. *Id*. His sensorium and cognitive functioning was largely fair, as well as his judgment and insight save for poor behavioral control. (Tr. 513-514). Dr. Magleby diagnosed social anxiety disorder, paranoid personality disorder, unspecified depressive disorder, alcohol use disorder in sustained remission, and cannabis use disorder in early remission. *Id*. Dr. Magleby concluded that Plaintiff's ability to understand, remember and carry out simple and more complex instructions is similar to other adults the same age; that Plaintiff's ability to maintain attention and concentration was fairly average compared to other adults the same age; that Plaintiff's ability to relate to others has been at least somewhat impaired by social anxiety and maladaptive personality traits; and, that Plaintiff's ability to withstand the mental stress and pressures associated with day-to-day work activity appears impaired primarily due to social anxiety and maladaptive personality traits. (Tr. 515-516).

On September 19, 2013, Plaintiff underwent a medical examination performed by Morgan R. Koepke, M.D. (Tr. 518-524). Plaintiff was noted as being 5'9" tall and weighing 231 pounds. (Tr. 519). On physical examination, Plaintiff was in no acute distress, had a normal back exam, had full range of motion of the bilateral upper and lower extremities at all joints, had good grip

strength, had 5/5 strength equal in the bilateral upper and lower extremities symmetrically, had normal reflexes and no edema. (Tr. 520). His legs were measured and found to be of unequal length, causing an antalgic gait, but Plaintiff had otherwise no difficulty with ambulation. *Id*. Dr. Koepke's psychiatric exam noted that Plaintiff reported paranoid feelings and being terrified of him and of strangers generally, but that Plaintiff did not panic, made good eye contact, and answered all questions appropriately. (Tr. 519). Dr. Koepke did note Plaintiff had a somewhat flat affect. *Id*. Based on his examination and interview, Dr. Koepke opined that from a physical standpoint, Plaintiff can participate in moderate work duties, could stand between 4 to 6 hours in an 8-hour workday with allowances to sit every l to 2 hours as needed. (Tr. 520). Further, Plaintiff should perform jobs only with his shoe lift in place. *Id*. He assessed no limitations of the upper extremities and opined Plaintiff would be able to lift above his head on a regular basis and could lift/carry up to 50 pounds on a regular basis. *Id*. Dr. Koepke observed that Plaintiff could walk on flat and uneven surfaces, could climb stairs, and otherwise has no specific physical limitations. *Id*.

On September 20, 2013, State Agency psychologist Vicki Warren, Ph.D., completed a mental RFC assessment opining that Plaintiff was markedly limited in his ability to interact appropriately with the general public, and moderately limited in the following areas: the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to respond appropriately to changes in the work setting, and the ability to travel in unfamiliar places or use public transportation. (Tr. 129-131). Dr. Warren explained that "Claimant can complete a workday and keep up a consistent, but not rapid, pace," that

7

"[i]nteraction with others should be occasional and superficial in nature," and that "[c]hanges to routine should be explained." *Id*. Dr. Warren further explained that Plaintiff "does have symptoms of depression and anxiety, however, he is fairly functional in his daily activities. He attends AA meetings frequently, he reads, does household chores, and is able to manage money." (Tr. 131).

On January 16, 2014, Dr. Langer completed a mental status questionnaire indicating that Plaintiff had halted conversation, difficulty expressing himself, daily depression, a flat affect, fear of others; anxiety at home and in public situations; paranoia and delusions about the government; and, poor concentration and memory. (Tr. 526-528). Dr. Langer found Plaintiff had fair insight and judgment, but noted that Plaintiff believed the government unfairly destroyed his business and "forced [him] to plead guilty to charging too much on a mortgage." (Tr. 526). Dr. Langer diagnosed major depression, PTSD, and paranoid personality disorder. (Tr. 527). He opined that Plaintiff had poor memory and concentration, was easily distracted, had low stress tolerance, was fearful of others, and experienced panic attacks at home and out in public. *Id*.

On January 28, 2014, State Agency psychologist Tonnie Hoyle, Psy.D., completed a mental RFC assessment opinion that largely echoed the assessment from Dr. Warren. (Tr. 145-147). She notes that on reconsideration, Plaintiff alleges worsening and that a statement from a psychologist indicates severe impairments. (Tr. 1467). Dr. Hoyle disagreed, noting that "the actual treatment notes indicate improvement in conditions with [treatment/prescriptions]. It should also be noted that his presentation in the Initial filing at the Physical and Psych [consultative examinations] was not reflective of the alleged severity." *Id*.

On April 30, 2015, Dr. Thakore completed a checklist style medical source statement. (Tr. 631-633). Dr. Thakore checked boxes indicating that Plaintiff would have extreme loss in his

8

ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers; and, to complete a normal workday and work week without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 631-632). He also indicated that Plaintiff would have marked loss in his ability to remember work-like procedures; to maintain concentration and attention for extended periods of two hour segments; to work in coordination with or proximity to others; and, to respond appropriately to changes in a routine work setting. *Id*. He also checked boxes indicating that even a minimal increase in mental demands or change in environment would cause the individual to decompensate. (Tr. 632). Dr. Thakore also indicated that Plaintiff required unscheduled breaks, and would miss more than four days of work per month. (Tr. 632-633).

On July 22, 2015, physical therapist Jim Micall performed a Work Ability Functional Capacity Evaluation ("FCE"). (Tr. 669-681). Mr. McCall concluded that Plaintiff was capable of light exertional work "with modification to minimize standing/walking to minimize hip pain." (Tr. 681). Mr. McCall indicated that Plaintiff could never climb ladders/scaffolds, kneel, squat, or operate foot controls; seldom bend/stoop, climb stairs, or stand/walk; occasionally reach high; and frequently sit. *Id*. On December 3, 2015, over four months after the exam, the FCE was signed by Christina Peters, D.O. (Tr. 681).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of*

*Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 et seq.).

2. Since the alleged onset date of disability, June 1, 2013, the claimant has had the following severe impairments: anxiety disorder, personality disorder, right hip pain, diabetes mellitus, and obesity. Since January 1, 2016, the claimant has had the following additional severe impairments: coronary artery disease, arterial insufficiency of the right lower extremity (20 CFR 416.920(c)).

3. Since the alleged onset date of disability, June 1, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that prior to January 24, 2016, the date the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following additional limitations. The claimant could frequently climb ladders, ropes, or scaffolds. The claimant could perform simple, routine tasks but not at a fast production rate pace, and with few changes in a routine work setting with any such changes being explained. The claimant could have occasional contact with supervisors, coworkers, and the public.

5. After careful consideration of the entire record, the undersigned finds that beginning on January 24, 2016, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following additional limitations. The claimant can frequently climb ladders, ropes, or scaffolds. The claimant can perform simple, routine tasks but not at a fast production rate pace, and with few changes in a routine work setting with any such changes being explained. The claimant can have occasional contact with supervisors, coworkers, and the public.

6. Since June 1, 2013, the claimant has been unable to perform any past relevant work (20 CFR 416.965).

7. Prior to the established disability onset date, the claimant was an individual closely approaching retirement age (20 CFR 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. Prior to January 24, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on January 24, 2016, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to January 24, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969a).

11. Beginning on January 24, 2016, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

12. The claimant's marijuana use is not material to the determination of disability.

13. The claimant was not disabled prior to January 24, 2016, but became disabled on that date and has continued to be disabled through the date of this decision (20 C.F.R. § 416.920(g)).

(Tr. 21-30).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

Plaintiff asserts the ALJ violated the treating physician rule with respect to the opinions of Dr. Thakore, a treating psychiatrist, and Dr. Langer, a treating psychologist. (R. 13). The Commissioner does not contest that Drs. Thakore and Langer were treating sources as understood within the regulations. (R. 14). The ALJ also considered these individuals to be treating sources. (Tr. 27).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion

13

controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

The ALJ addressed Dr. Langer and Dr. Thakore's opinions as follows:

> The undersigned gives little weight to statements of treating psychologist Dr. Daniel R. Langer Ed.D., who stated the claimant has poor memory and concentration, is easily distracted, has low stress tolerances, and is fearful of others ( 4F2-4). Dr. Langer's statements are vague and provide limited guidance as to specific functional restrictions. Moreover, Dr. Langer's statements are inconsistent with the claimant's generally unremarkable presentation at the examination with Dr. Magleby and his lack of distraction during the hearing in this matter (see 2F, hearing testimony).

> The undersigned gives little weight to the opinion of treating physician Dr. Yuan Hua Thakore M.D., who stated in relevant part that the claimant will need to take unscheduled, unpredictable breaks on a frequent basis, and will miss more than four days per month (6Fl-3). Dr. Hua Thakore's opinion appears highly sympathetic to the claimant as it appears based solely on the claimant's subjective allegations, citing to no observed signs or findings to support these off task restrictions. Such restrictions are not consistent with a record showing the

claimant has never required any emergency psychiatric care (see 19F14).[2]

(Tr. 27).

Dr. Langer's opinion rendered on January 16, 2014, is indeed vague. (Tr. 526-527). Dr. Langer opined that Plaintiff had poor memory and concentration, was easily distracted, had low stress tolerance, was fearful of others, and experienced panic attacks at home and out in public. *Id.* As observed by the ALJ, Dr. Langer's statement provides no meaningful guidance regarding specific functional restrictions. Though Plaintiff plainly assumes it to be so, it is not entirely clear whether Dr. Langer's opinion is more restrictive than the RFC finding, which limits Plaintiff to simple and routine tasks (not at a fast production rate pace), few changes in a routine work setting where such changes are explained, and only occasional contact with supervisors, coworkers, and the public. (Tr. 27). Thus, the court finds no error in the ALJ's handling of Dr. Langer's opinion.

With respect to Dr. Thakore's opinions, the ALJ essentially gave four reasons for rejecting them: (1) Dr. Thakore was highly sympathetic to Plaintiff; (2) he based his opinions solely on Plaintiff's subjective complaints; (3) Dr. Thakore did not cite observed signs or findings to support the off-task restrictions; and (4) Plaintiff never required any emergency psychiatric care.

The first two reasons appear to be related. The ALJ does not explain why she believes Dr. Thakore was highly sympathetic to Plaintiff, however. "The Sixth Circuit has faulted an ALJ for rejecting a treating physician's opinion solely because the ALJ found that the physician's motives were suspect, but the Court has not prohibited an ALJ from examining a treating physician's motives." *Leeson v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 122150, *44 (S.D. Ohio, Sep.

---

[2] This treatment record, dated June 3, 2016, postdates January 24, 2016, the day on which the ALJ found Plaintiff's disability began.

14, 2015), *citing Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009); *Yates v. Colvin*, 940 F.Supp.2d 664, 676 (S.D. Ohio, 2013). Here, the ALJ raised the possibility that Dr. Thakore may have been motivated by sympathy for his patient, but that does not establish a *per se* violation of the treating physician rule, because it was not the sole reason given. Rather, the ALJ's compliance with the treating physician rule, or lack thereof, hinges on the other reasons given.

The ALJ's second reason—that Dr. Thakore allegedly based his opinion solely on Plaintiff's subjective complaints rather than on information gained through his history of psychiatric treatment of the Plaintiff—is itself unexplained.

The third reason given for rejecting Dr. Thakore's off-task restrictions is the psychiatrist's alleged failure to cite "observed signs or findings." (Tr. 27). Indeed, the opinion dated April 30, 2015, contains a rather brief and limited explanation. Dr. Thakore's explanation for the assessed limitations consists of the following: "[Plaintiff] continues to struggle with debilitating depression, beliefs [sic] that others may harm him, anxiety and panic in public situations. He expressed having difficulty leaving his house." (Tr. 633). The court finds a decision from the Southern District of Ohio on a nearly identical issue instructive:

> The ALJ also claimed that Dr. Pasha's opinion was "based on uncritical acceptance of the claimant's subjective complaints and allegations," (Tr. 22), but the ALJ did not cite to any evidence to support this assertion. *See id.* It is not entirely clear what types of finding the ALJ wanted to see in Dr. Pasha's reports. Under the Regulations, the existence of a medically determinable impairment requires a statement of symptoms as well as psychiatric signs. "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g. abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source." Listing § 12.00B, Appendix 1, Subpart P, Part 404. The Sixth Circuit Court of Appeals has rejected the need for objective medical evidence to support a claimed mental impairment:

16

> [A] psychiatric impairment is not readily amenable to substantiation by objective laboratory testing as a medical impairment ... Consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine ... In general, mental disorders cannot be ascertained and verified as are most physical illnesses ... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.
>
> *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) (citations omitted). In other words, while an ALJ is free under *Blankenship* to reject a psychiatrist's opinion, there must be some valid reason to do so, such as a reason to question the diagnostic techniques. In this case, the ALJ provided no such reason as a basis for rejecting … Dr. Pasha's opinions.

*Kester v. Astrue*, No. 3:07CV00423, 2009 WL 275438, at *9 (S.D. Ohio Feb. 3, 2009).

Here too, while the ALJ was not bound by Dr. Thakore's opinions, there must be some valid reason for the ALJ questioning those opinions concerning Plaintiff's mental impairments, their severity, and their functional limitations. While the court considers the decision as a whole, it is notably bereft of any meaningful consideration of Plaintiff's mental health treatment history or course of treatment with either Dr. Langer or Dr. Thakore.[3] The court's above recitation of some of the psychological treatment history reveals some significant variation, for example, in the results of the treating source's mental status examinations. The ALJ discusses none of this. Thus, the ALJ's conclusion concerning Dr. Thakore's opinion is insufficient. Moreover, the lack of any meaningful discussion concerning Plaintiff's mental health treatment history calls into question whether the ALJ satisfied her obligation to "consider all relevant evidence in the case

---

[3] The ALJ recounts the opinion evidence, but the decision discusses none of the mental health *treatment* history except for the lack of emergency psychiatric treatment. (Tr. 19-30).

record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (*citing* Soc. Sec. Rul. ("SSR") No. 06–03p, 2006 WL 2329939, at *4 (S.S.A. Aug. 9, 2006)).

The fourth reason—that Plaintiff never required emergency psychiatric care— appears to be based on the ALJ's lay assumption that a person could not possibly be as limited psychologically as assessed by Dr. Thakore if he or she has never required or sought out emergency psychiatric care. Although the ALJ's assumption may appear reasonable to a lay person, neither the ALJ nor this court has any special medical expertise to make such an assumption. ALJ's are not trained medical experts and, it is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Philips v. Comm'r of SSA*, 2012 U.S. Dist. LEXIS 1395, *21 (N.D. Ohio, Jan. 5, 2012) (noting that the ALJ discounted the treating source's findings by highlighting that plaintiff was alert and cooperative, and that her thought processes were logical, linear and coherent; but the determination that such qualities negate the assessed limitations can only be addressed properly by a medical professional) (McHargh, M.J.); *Stallwoth v. Astrue*, 2009 U.S. Dist. LEXIS 131119, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.")

Given the above identified shortcomings, the court is unable to discern why the ALJ gave

treating psychiatrist Dr. Thakore's opinion so little weight. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004). Based on the ALJ's conclusory statements, the court cannot conduct a meaningful review.

Because the court finds a remand is necessary, the court foregoes addressing Plaintiff's remaining arguments in the interests of judicial economy.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 28, 2019